```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA
                                  :
      -  v. -
                                  :     S1 09 Cr. 507 (KMW)
KIRK LACEY,
MARK BARNETT,                     :
OMAR HENRY, and
PETER CHEVERE,                    :

                  Defendants.     :

- - - - - - - - - - - - - - - - - x
```

## GOVERNMENT'S MOTION IN LIMINE

PREET BHARARA
United States Attorney for the
Southern District of New York,
Attorney for the United States
      of America


AMY LESTER
JASON A. MASIMORE
Assistant United States Attorneys

      - Of Counsel -

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . 1

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . 3

     I.   Any Argument by the Defense that the Victim Lenders Were
         Negligent Should Be Precluded at Trial . . . . . . . 3

    II.   Any Argument that the Defendants Lacked Intent to Defraud
         Because They Believed that No Ultimate Harm Would Be
         Suffered by the Victim Lenders Should Be Precluded at
         Trial . . . . . . . . . . . . . . . . . . . . . . . 9

   III.  Questions Regarding a Witness's Arrest and Pending
         Criminal Charges Should Be Precluded . . . . . . . 14

        A.   Background . . . . . . . . . . . . . . . . . . 14

        B.   Federal Rules of Evidence 608(b) and 611 . . . 15

        C.   Questioning About the Arrest and Pending Charges
            Should Not Be Permitted . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
                                  :
UNITED STATES OF AMERICA
                                  :
     -  v.  -
                                  :    S1 09 Cr. 507 (KMW)
KIRK LACEY,
MARK BARNETT,                     :
OMAR HENRY, and
PETER CHEVERE,                    :

          Defendants.            :

- - - - - - - - - - - - - - - - - x

## INTRODUCTION

The Government respectfully submits this motion in limine to request that the Court preclude the defendants from: (1) suggesting that the victim lenders were negligent; (2) arguing that the fact that the defendants may not have intended for the victim lenders to suffer any ultimate harm negates their intent to defraud; and (3) cross-examining a Government witness about his recent arrest and the pending criminal charges against him.

## BACKGROUND

Superseding Indictment S1 09 Cr. 507 (KMW) (the "Indictment") charges the defendants with engaging in a scheme to defraud federally insured banks and other lending institutions (the "lenders") by submitting applications for residential mortgages containing materially false or misleading information, in order to induce those lenders to make loans to persons to whom, and at terms on which, the lenders otherwise would not have agreed to make.  The defendants submitted, or caused to be submitted, loan applications

and other documents to the lenders containing false information concerning the borrowers' employment, income, assets, and whether the borrowers intended to live in the properties.

The Indictment further alleges that the defendants identified properties for sale in the New York metropolitan area (the "target properties"), sometimes targeting individuals who were having trouble making their mortgage payments.  In the typical case, the defendants then arranged for the distressed properties to be sold to a corporate entity at a low purchase price, usually through a so-called "short sale" transaction.

As a further part of the scheme, the defendants then resold, or "flipped," the target properties within a short period of time to "straw buyers," who never intended to live in the properties.  The defendants assisted the straw buyers in obtaining mortgage loans to fund the purchases by processing their loan applications or working with mortgage brokers or loan officers to process the applications.  One or more of the defendants received the sale proceeds from the flip sale of the properties, thus "stripping the equity" from the property.

Three of the trial defendants, Kirk Lacey, Omar Henry, and Peter Chevere, worked at MTC Real Estate, Inc. ("MTC"), and submitted loan applications on behalf of the straw buyers.  The fourth defendant, Mark Barnett, was a loan officer at Golden First Mortgage Corporation -- one of the lenders at issue -- who

processed some of the loan applications submitted by the defendants who worked at MTC.  The Government expects the evidence at trial to show that the defendants knew that many, if not all, of the loan applications they submitted or processed on behalf of the straw buyers contained materially false statements about the straw buyers' employment, income, assets, and intention to live in the properties.

## DISCUSSION

### I.  Any Argument by the Defense that the Victim Lenders Were Negligent Should Be Precluded at Trial

The Government respectfully requests that the Court preclude any suggestion or argument by the defendants that the victim lenders were negligent, or could have been more diligent, in their dealings with the defendants.  The Court should preclude the defendants' efforts to blame the victims of the charged crimes because settled Second Circuit caselaw makes plain that a victim's negligence is no defense to a fraud charge.  The federal proscription of fraudulent schemes simply does not depend on whether a victim was diligent or not.

In United States v. Thomas, 377 F.3d 232 (2d Cir. 2004), the Second Circuit adopted a rule that the negligence of a victim of a fraud in detecting that fraud cannot be used as a defense.  In Thomas, the defendant was charged with inducement of travel in interstate commerce for a fraudulent purpose.  Defense counsel attempted to cross-examine a representative of the victim entity

3

about his purported lack of caution and diligence in dealing with the defendant. The district court questioned the propriety of the line of questioning, noting that it was no defense to fraud that the victim was foolish or made insufficient inquiries, and expressing its concern that defense counsel was insinuating to the jury that the victim could have discovered the fraud had he asked the right questions. Defense counsel disclaimed any such intent and was directed to move on. Id. at 240-41. The Second Circuit held the ruling to be an appropriate exercise of the District Court's discretion.

The Second Circuit also upheld the district court's mid-trial instruction to the effect that if the jury found fraud to be proved, it would be no defense that the victim might have discovered the fraud had it probed further. See id. at 241-42. The Thomas court made clear that federal anti-fraud statutes prohibit schemes to defraud and that to establish a scheme to defraud, there is no requirement that the victim act as a person of ordinary prudence would. See id. at 241 n.5. Thomas emphatically "refuse[s] to accept the notion that 'the legality of a defendant's conduct would depend on his fortuitous choice of a gullible victim.'" Id. at 243 (citing United States v. Benson, 548 F.2d 42, 46 (2d Cir. 1977)).

In United States v. Amico, 486 F.3d 764 (2d Cir. 2007), the Second Circuit expanded the Thomas ruling to a charge of mail

4

fraud in a mortgage fraud context.  The district court rejected a defendant's proposed jury instruction stating that the victim could have discovered false representations in mortgage fraud applications by the defendants, and that their failure to do so constituted a defense.  The Court noted that "[t]he majority of circuits to address the issue have rejected this defense, holding that a victim's lack of sophistication is not relevant to the intent element of mail or wire fraud."  <u>Id</u>. at 780.  The Court expressly extended the <u>Thomas</u> holding to a charge of mail fraud, stating, "We see no significant difference between § 2314 [inducement to travel in interstate commerce for a fraudulent purpose] and § 1341 [mail fraud] that would justify not extending our holding in <u>Thomas</u> to both statutes."  <u>Id</u>.

        Federal law also makes clear that whether the lending institutions were actually deceived by, or relied upon, the defendants' conduct and/or statements is irrelevant, because the success of a defendant's scheme to defraud is irrelevant under federal anti-fraud statutes.  What matters is whether there existed a scheme to defraud.  <u>See</u> <u>Neder</u> v. <u>United States</u>, 527 U.S. 1, 24-25 (1999) ("The common-law requirement[] of 'justifiable reliance' . . . plainly ha[s] no place in the federal fraud statutes"; "[b]y prohibiting the 'scheme to defraud,' rather than the completed fraud, the elements of reliance and damage would clearly be inconsistent with the statutes Congress enacted.").

In light of the Second Circuit's admonition that victim negligence, carelessness, or gullibility is no defense to a charge of fraud and clear Supreme Court law that reliance is not an element that the Government need prove in a fraud case, this Court should direct that defense counsel not suggest -- in opening statements, cross-examination, summation, or otherwise -- that the banks and their employees could, or should, have been more diligent in their dealings with the defendants or that, somehow, the banks engaged in misconduct in their dealings with the defendants and their companies.

Relatedly, the Government respectfully requests that the jury be informed that even if a bank officer or employee may have known the true nature of the questioned transaction, that is not a defense to bank fraud.  See Joint Requests to Charge, Government Request No. 17.  Rather, the question is whether the financial institution itself, not its officers or agents, was defrauded. Title 18, Section 1344, the bank fraud statute, was intended to reach a wide range of fraudulent activity that undermines the integrity of the federal banking system.  It is the bank, as an entity, that is the victim of a bank fraud.  Thus, even if a bank officer or employee (or multiple officers or employees) may have known the true nature of the questioned transactions, that is not a defense to bank fraud.  See United States v. Jimenez, 513 F.3d 62, 75 (3d Cir. 2008) (affirming jury instruction that even if a

6

bank officer or employee knew the true nature of the transaction, it is not a defense to bank fraud); United States v. Gallant, 537 F.3d 1202, 1225 (10th Cir. 2008) (holding that even if the owner of a bank knew the true nature of the transaction, the bank could be defrauded); United States v. Hamaker, 455 F.3d 1316, 1326 (11th Cir. 2006); United States v. Winkle, 477 F.3d 407, 414 n.3 (6th Cir. 2007); United States v. Waldroop, 431 F.3d 736, 742 (10th Cir. 2005); United States v. Rackley, 109 F.3d 1436, 1440 (9th Cir. 1997); United States v. Saks, 964 F.2d 1514, 1518-19 (5th Cir. 1992). See also United States v. Blackmon, 839 F.2d 900, 904-06 (2d Cir. 1988). Hence, courts have consistently concluded that it is proper to instruct the jury that the defendants' intent to defraud must target the bank, not the individual bank officers. See Jimenez, 513 F.3d at 75.

Here, the very nature of the fraud demonstrates that the lenders themselves were victimized. The defendants submitted and caused to be submitted loan applications containing materially false information as to employment, income, assets, and, importantly, whether the borrower intended to reside in the property. These false statements were intended to induce the lenders to agree to lend money to persons, and on terms at which, they would not otherwise have agreed to do. Moreover, many of the properties that were flipped ended up in default or foreclosure because the straw buyers never intended to make the mortgage

7

payments themselves.  In any event, the Government need not prove any actual loss in order to establish fraud upon the lenders.  See United States v. Barrett, 178 F.3d 643, 647-48 (2d Cir. 1999) (stating that a bank "need not be actually victimized" as long as a defendant acted with the requisite intent to victimize the bank); see also United States v. Schwartz, 924, F.2d 410, 420 (2d Cir. 1991) ("It need not be shown that the intended victim of the fraud was actually harmed; it is enough to show defendants contemplated doing actual harm, that is, something more than merely deceiving the victim."); United States v. King, 860 F.2d 54, 55 (2d Cir. 1988) (same); United States v. Karro, 257 F.3d 112, 118 (2d Cir. 2001) (defendant who intentionally provides false information to lender about her identity to obtain credit card has intent to defraud, whether or not she intended to repay debts).

Accordingly, the Court should preclude the defense from suggesting that the victim lenders were negligent in failing to discover certain facts, or that they could have been more diligent in discovering certain facts, regarding the mortgage loan applications submitted or caused to be submitted by the defendants. The Government also respectfully requests that the Court issue the Government's proposed jury instructions stating that the negligence of a victim is not a defense, and that even if an employee of a bank or lender knew the true nature of the transactions, the lender, as an entity, is still a victim of fraud.  See Joint

8

Requests to Charge, Government Request Nos. 17, 37.

**II. Any Argument that the Defendants Lacked Intent to Defraud Because They Believed that No Ultimate Harm Would Be Suffered by the Victim Lenders Should Be Precluded at Trial**

The Government respectfully requests that the Court preclude the defense from arguing that, even if the defendants deliberately supplied false material information to the lenders issuing the home mortgage loans at issue, but believed that the lenders would not suffer any ultimate harm -- because the loans would ultimately be repaid, or otherwise -- the defendants lacked intent to defraud the lenders and cannot be found guilty of bank fraud or wire fraud. Such an argument is contrary to well-established Second Circuit law and should not be permitted at trial.

In proving the elements of bank fraud and wire fraud -- or conspiracy to commit bank fraud or wire fraud -- the Government must establish, among other things, that the defendant had the specific intent to harm the intended victims of the scheme. See, e.g., United States v. Stavroulakis, 952 F.2d 686, 694 (2d Cir. 1992) (bank fraud); United States v. DiNome, 86 F.3d 277, 283 (2d Cir. 1996) (wire fraud). However, the proscribed harm need not include the physical taking of property; rather, the Second Circuit has repeatedly held that the property interests protected by the fraud statutes include the victims' "right to control" their property. See, e.g., United States v. Wallach, 935 F.2d 445, 462

9

(2d Cir. 1991) ("The 'right to control' has been recognized as a property interest that is protected by the mail fraud statute."); see also DiNome, 86 F.3d at 283-84 (affirming wire fraud conviction where fraudulent intent proven was intent to deny "right to control").[1]

Under the "right to control" theory, as articulated by the Second Circuit, "the concrete harm contemplated by the defendant is to deny the victim the right to control its assets by depriving it of information necessary to make discretionary economic decisions." United States v. Rossomando, 144 F.3d 197, 201 n.5 (2d Cir. 1998); Wallach, 935 F.2d at 463 (under "right to control" theory, "inaccurate reporting of information that could impact on economic decisions can provide the basis for a mail fraud prosecution"). In Rossomando, the Court described a paradigmatic example of such a fraud scheme as follows:

> [W]here a defendant deliberately supplies false information to obtain a bank loan, but

_____

[1]   Although the Second Circuit has not yet explicitly applied the "right of control" theory in a bank fraud case, it is clear that where, as here, the same concepts are at issue, the Court's construction of the scope of the mail and wire fraud statutes applies equally to the bank fraud statute. See Stavroulakis, 952 F.2d at 694 ("We agree that the bank fraud statute should be read expansively and, where it dovetails with the mail and wire fraud statutes, we look to precedents arising under those statutes to inform our interpretation of such amorphous phrases as 'scheme to defraud.'"); United States v. Chandler, 98 F.3d 711, 715 (2d Cir. 1996) ("Since the bank fraud statute was modeled after the mail and wire fraud statutes, precedents interpreting those statutes are helpful in interpreting the bank fraud statute.")

> plans to pay back the loan and therefore
> believes that no harm will "ultimately" accrue
> to the bank, the defendant's good-faith
> intention to pay back the loan is no defense
> because he intended to inflict a genuine harm
> upon the bank -- i.e., to deprive the bank of
> the ability to determine the actual level of
> credit risk and to determine for itself on the
> basis of accurate information whether, and at
> what price, to extend credit to the defendant.

United States v. Rossomando, 144 F.3d at 201.

An entity's interest in its property is harmed when it is caused to make decisions about that property based on false information. DiNome, 86 F.3d at 283 ("This right to control theory is predicated on a showing that some person or entity has been deprived of potentially valuable economic information.") (internal quotation marks and citations omitted); see also Chandler, 98 F.3d at 716 ("As a result of Chandler's deceit [in using a pseudonym to apply for credit], Household [the bank] was necessarily exposed to potential loss because it extended credit to someone whom it did not know had more than one identity."). Thus, as explained by the Court in Rossomando, where a defendant makes material misrepresentations on an application for a loan, even with the intention ultimately to repay the loan, the "genuine harm" that he intends "to inflict . . . on the bank" is the deprivation of the accurate information that the bank would need "to determine the actual level of credit risk and determine for itself" whether to

11

extend the loan.  <u>Rossomando</u>, 144 F.3d at 201.[2]

Accordingly, knowingly providing false information with the knowledge that another will rely on it in making discretionary economic decisions is -- like outright theft -- not an act capable of being carried out with benign intent.  <u>See</u> <u>United States</u> v. <u>Chacko</u>, 169 F.3d 140, 148 (2d Cir. 1999) ("When it is clear that a scheme, viewed broadly, is necessarily going to injure, it can be presumed that the schemer had the requisite intent to defraud."). To deprive lenders of the accurate information they need to control their assets is to harm the lenders' property interest in those assets, and, therefore, to do so intentionally is to intentionally

---

[2]   A slight, but in this case irrelevant, caveat to this straightforward definition of "harm" stems from <u>United States</u> v. <u>Mittelstaedt</u>, 31 F.3d 1208 (2d Cir. 1994).  The <u>Mittelstaedt</u> Court held that the harm caused by providing false information that affects another's economic decision-making only falls within the mail fraud statute's protection of property interests when the false information "bear[s] on the ultimate value of the transaction" to the information's recipient, <u>id</u>. at 1217 (emphasis added), and not when the false information affects only the recipient's moral or other non-pecuniary assessment of the transaction.  In other words, the Court held that for the deprivation of accurate information to fall within the purview of the mail fraud statute, the information must have a pecuniary impact on the value of the transaction, and not simply affect "the decision regarding where . . . money is spent."  <u>Id</u>. at 1217 (emphasis added).  Where, as in the instant case, the false information provided was purely economic in nature, and had no conceivable moral or non-pecuniary component, this issue has been held to be irrelevant.  <u>DiNome</u>, 86 F.3d at 284 (even though jury not instructed on issue of pecuniary and non-pecuniary impact of information, "clear factual distinction" from <u>Mittelstaedt</u> existed where defendant deceived bank by lying about income on loan application, such that no danger existed that jury had improperly found defendant guilty "for deceiving the bank in an immaterial way").

harm those lenders.  <u>See</u> <u>Karro</u>, 257 F.3d at 118 ("[S]ufficient intent to inflict harm can be found from the intentional withholding of information from a lender which lowers the value of the transaction due to the lender's lack of information pertinent to the accurate assessment of the risk it faces and the propriety of extending credit to that particular individual . . . . [I]t is [therefore] irrelevant whether the borrower intended in good faith to repay the loan.").  Thus, the defense should be precluded from arguing at trial that a belief on the part of the defendants that no ultimate harm would accrue to the victim lenders -- despite the false representations in the loan applications the defendants submitted or processed on behalf of the straw buyers -- is a defense to bank fraud or wire fraud.

In addition, the Government respectfully requests that the Court give the Government's proposed jury instructions stating that if the defendants deliberately supplied material false information in order to obtain the home mortgage loans at issue, but anticipated that payment would be made and therefore believed that no harm would ultimately accrue to the lenders, that anticipation, or even the actual payment of money, is not a defense.  The jury should also be instructed that, if they find that the defendants intended to inflict harm by obtaining money fraudulently, then they may find that the defendants acted with intent to defraud.  <u>See</u> Joint Requests to Charge, Government

13

Request Nos. 16 and 26.

The Government also respectfully requests that the Court include the language proposed by the Government in the parties' joint request to charge regarding good faith on the part of the defendants, which makes clear that if the defendants believed that ultimately everything would work out so that no one would lose any money as a result of their false misrepresentations to the lenders, that does not mean that they acted in good faith.  <u>See</u> Joint Requests to Charge, Request No. 18.  These proposed charges are supported by the foregoing caselaw and were given as requested here by the Government by Judge Scheindlin in a recent mortgage fraud trial, <u>United States</u> v. <u>George Esso and Ravi Persaud</u>, S3 09 Cr. 958 (SAS) (S.D.N.Y. Aug. 25, 2010).

## III. Questions Regarding a Witness's Arrest and Pending Criminal Charges Should Be Precluded

The Government respectfully moves to preclude any questioning of Sherman Desmoulin, Jr., one of the Government's anticipated witnesses in this case, regarding his recent arrest and the criminal charges currently pending against him.  Given the nature of the charges, any such inquiry is not permissible under Federal Rules of Evidence 608(b) and 403.

A.   <u>Background</u>

The Government expects that it will call as a witness Sherman Desmoulin, Jr., who will be testifying pursuant to a non-

14

prosecution agreement with the Government.[3]   On August 6, 2010, Desmoulin was arrested by officers with the New York City Police Department on White Plains Road in the Bronx, after his car was pulled over.  According to the arrest report of the incident, after stopping Desmoulin's car, the officers found a loaded handgun and a small amount of marijuana.  As a result, Desmoulin has been charged by the Bronx District Attorney's Office with the following: one count of criminal possession of a weapon in the second degree, a Class C felony; one count of criminal possession of a weapon in the fourth degree, a Class A misdemeanor; possession of ammunition, a violation; one count of aggravated unlicensed operation of a motor vehicle in the second degree, a misdemeanor; one count of aggravated unlicensed operation of a motor vehicle in the third degree, a misdemeanor; and unlawful possession of marijuana, a violation.  These charges are currently pending.[4]

B.   Federal Rules of Evidence 608(b) and 611

Federal Rule of Evidence 608(b) prohibits the introduction of extrinsic evidence of specific instances of conduct of a witness, other than the conviction of a crime, for the purpose

---

[3]   The non-prosecution agreement relates only to Desmoulin's potential criminal liability in the instant case.

[4]   On the advice of his counsel, Desmoulin has not discussed the details of the charges with the Government, other than to confirm that he was in fact arrested and that charges are pending against him.

of attacking the witness's character for truthfulness.[5]  The Rule,
however, vests the Court with discretion to permit inquiry of a
witness on cross-examination regarding "specific instances of the
conduct of a witness," if the conduct is probative of "truthfulness
or untruthfulness."  Fed. R. Evid. 608(b).  Likewise, Federal Rule
of Evidence 611 gives the District Court the power to exercise
"reasonable control over the mode and order of interrogating
witnesses" so as to "protect witnesses from harassment or undue
embarrassment."  Fed. R. Evid. 611.

Evidence otherwise admissible under Rule 608(b)
nevertheless should be excluded "if its probative value is
substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury."  United States v.
Stewart, 590 F.3d 93, 133 (2d Cir. 2009) (cert denied, __ U.S. __,
130 S. Ct. 1924 (2010)) (quoting Fed. R. Evid. 403).  See Fed. R.
Evid. 608(b), 1972 advisory committee note (noting that questioning
pursuant to Rule 608(b) is limited by the "overriding protection of
Rule 403").  Therefore, a Court should allow cross-examination into
specific instances of conduct not resulting in a conviction only if
they are probative of truthfulness or untruthfulness, and, even
then, subject to the strictures of Rule 403.

---

[5]  Because Desmoulin has not been convicted of any crime,
Federal Rule of Evidence 609 does not apply.

16

C.   Questioning About the Arrest and Pending Charges Should Not Be Permitted

Desmoulin should not be subject to cross-examination about his arrest or the pending charges against him because they do not relate to his credibility or "truthfulness or untruthfulness," as required by Rule 608(b), and are far more prejudicial than probative.

The charges against Desmoulin do not bear on veracity. None of the conduct that resulted in his arrest, even if it is true, is "probative of truthfulness or untruthfulness." Fed. R. Evid. 608(b). Possessing a gun, driving with a suspended license, and possessing a small amount of marijuana are acts that have no bearing on credibility, because they do not provide a legitimate basis for the jury to test Desmoulin's ability to tell the truth. See United States v. Rosa, 11 F.3d 315, 336 (2d Cir. 1993) (affirming the exclusion of evidence of acts including rape and burglary as "having an insufficient bearing on the witness's credibility"); United States v. Rabinowitz, 578 F.2d 910, 912 (2d Cir. 1978) (holding that the district court properly precluded questions regarding "prior acts of sodomy upon young children" because such acts did not bear on the witness's credibility).

Moreover, the mere existence of a witness's arrest or indictment is not a specific instance of conduct that is the subject of permissible cross-examination under Rule 608(b). "Arrest without more does not . . . impeach the integrity or impair

17

the credibility of a witness.  It happens to the innocent as well as the guilty.  Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness." <u>Michelson</u> v. <u>United States</u>, 335 U.S. 469, 482 (1948)); <u>see also</u> <u>Daniels</u> v. <u>Loizzo</u>, 986 F. Supp. 245, 252 (S.D.N.Y. 1997) (quoting <u>Michelson</u> and excluding evidence of a plaintiff's arrests that did not result in convictions); <u>Kelly</u> v. <u>Fisher</u>, No. 86 Civ. 1691, 1987 WL 16593, at *2 (S.D.N.Y. Sept. 2, 1987) (same).

In addition, questions about the arrest and charges should not be permitted under Rule 403 because their probative value is far outweighed by their prejudicial effect.  Questions posed to Desmoulin about his arrest and the pending charges would needlessly embarrass him and would waste the Court's time without adding any probative value.

Accordingly, evidence and cross-examination about Desmoulin's arrest and pending charges should be excluded.

18

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court preclude the defendants from (1) arguing or suggesting at trial that the victim lenders were negligent; (2) arguing that the defendants lacked specific intent to defraud the lenders because they believed that ultimately no harm would accrue to the lenders; and (3) questioning witness Sherman Desmoulin, Jr. about his recent arrest or pending charges.

Dated:    New York, New York
          November 15, 2010

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney


                    By:   _____/s_____
                          Amy Lester
                          Jason A. Masimore
                          Assistant United States Attorneys
                          (212) 637-2416/2580